**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MAINE**

| | |
|---|---|
| **MONA RICHARDSON**, resident of Town of Wilton, County of Franklin, State of Maine,<br><br>     Plaintiff,<br><br>  v.<br><br>**FRANKLIN COUNTY SHERIFF'S OFFICE,** a law enforcement agency for County of Franklin, State of Maine,<br><br>and<br><br>**WILTON POLICE DEPARTMENT**, a law enforcement agency serving the Town of Wilton, State of Maine,<br><br>and<br><br>**FARMINGTON POLICE DEPARTMENT**, a law enforcement agency serving the Town of Farmington, State of Maine,<br><br>and<br><br>**JAY POLICE DEPARTMENT,** a law enforcement agency serving the Town of Jay, State of Maine,<br><br>and<br><br>**FRANKLIN COUNTY DISTRICT ATTORNEY'S OFFICE**, in their official and individual capacities as the prosecuting authority for Franklin County, State of Maine,<br><br>and<br><br>**FRANKLIN COUNTY DETENTION CENTER** a jail serving Franklin County, State of Maine<br><br>and | **Case No**. |

1

**JOHN/JANE DOES 1 THROUGH 25,** are          )
individual law enforcement officers, deputies,          )
supervisors, dispatchers, and/or jail staff members          )
whose identities are currently unknown,          )
                                                            )
                          Defendants.          )

**FEDERAL COMPLAINT WITH JURY DEMAND**

NOW COMES Plaintiff Mona Richardson ("Plaintiff or Ms. Richardson"), by and through undersigned counsel, and for her cause of action against the above-named Defendants, alleges and shows claims for relief as follows:

**I.      PRELIMINARY STATEMENT**

1. Ms. Richardson brings this civil rights action to obtain redress for an unlawful, warrantless seizure at her home in Wilton, Maine; her subsequent arrest and prolonged detention; and the denial of essential medications and appropriate medical care while she was in law enforcement custody, including at Franklin County Detention Center, and during transport to, and evaluation at, local hospitals.

2. Ms. Richardson is a sixty-five-year-old disabled woman. According to her report, officers came onto her property and "roused" her based on an allegation that she had threatened someone by phone. She demanded that they leave and requested a warrant. Instead of respecting the constitutional limits on warrantless seizures in the home, the officers took her into custody, prevented her from securing vital medications, prevented her from dressing appropriately, and refused to allow her to arrange care for her dogs.

3. After her arrest and during detention, Ms. Richardson spent hours in a cell without access to her prescribed essential medications and because of this deprivation she experienced seizures. She was detained for approximately twenty-two hours and then transported to St. Mary's Hospital in Lewiston, Maine.  A bail commissioner stated that she did not

2

belong in jail and directed that she be transported for medical care. Even after she reached medical care, she alleges that she still went without necessary medications until she was able to speak with a nurse practitioner, who minimized her medical needs.

4. The conduct described in this Complaint violated Ms. Richardson's rights under the United States Constitution, including her rights to be free from unreasonable searches and seizures, to be free from arrest and detention without probable cause, and to receive constitutionally adequate medical care while held in custody.

5. Ms. Richardson seeks compensatory damages, punitive damages, declaratory relief, and appropriate injunctive relief to prevent recurrence, including training and policy reforms.

## II.  JURISDICTION AND VENUE

6. This action arises under the Constitution and laws of the United States, and is brought pursuant to the federal civil rights statute, 42 U.S.C. § 1983 (as enacted 1871).

7. This Court has subject matter jurisdiction because the action presents federal questions. 28 U.S.C. § 1331 (as enacted 1948).

8. This Court also has jurisdiction because the action seeks to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States. 28 U.S.C. § 1343 (as enacted 1948).

9. Venue is proper in this District because the events and omissions giving rise to Ms. Richardson's claims occurred in Maine, including in Wilton, Franklin County, and because the Defendants reside in, are located in, or conduct official business in this District. 28 U.S.C. § 1391 (as amended).

10. Jurisdiction supporting Ms. Richardson's claim for attorney's fees and costs is conferred by 42 U.S.C. § 1988.

3

### III.    PARTIES

10. **Plaintiff Mona Richardson** is an individual residing at 1022 Orchard Drive, Wilton, Maine 04294. She was born on November 5, 1960. Ms. Richardson is disabled and, at least during the events described, required vital medications and at times the use of a wheelchair.

11. **Defendant Franklin County Sheriff's Office** is a law enforcement agency serving Franklin County, Maine. To the extent the Sheriff's Office is not a separate suable entity under Maine law, Ms. Richardson intends by this designation to sue the County entity responsible for operating the Sheriff's Office and for setting policies, practices, training, and supervision for deputies.

12. **Defendant Wilton Police Department** is the municipal police department serving Wilton, Maine. To the extent the Police Department is not a separate suable entity, Plaintiff intends by this designation to sue the Town of Wilton, Maine, and/or the municipal entity responsible for operating the police department and for setting policies, practices, training, and supervision.

13. **Defendant Farmington Police Department** is the municipal police department serving Farmington, Maine. To the extent the Police Department is not a separate suable entity, Plaintiff intends by this designation to sue the City or Town responsible for operating the department and for setting policies, practices, training, and supervision.

14. **Defendant Jay Police Department** is the municipal police department serving Jay, Maine. To the extent the Police Department is not a separate suable entity, Plaintiff intends by this designation to sue the municipal entity responsible for operating the department and for setting policies, practices, training, and supervision.

4

15. **Defendant Franklin County District Attorney** is the prosecuting authority for Franklin County, Maine. Plaintiff alleges that the District Attorney's Office participated in, directed, ratified, or continued the prosecution and detention described below despite the absence of probable cause and despite information regarding Plaintiff's disability and medical needs. Plaintiff brings claims for non-advocacy conduct and for policies, customs, or supervisory actions not protected by absolute prosecutorial immunity, and reserves the right to amend to add the proper governmental entity and responsible officials upon confirmation.

16. **Defendant Franklin County Detention Center** is the detention center in Farmington, Maine that held Plaintiff on August 5-6, 2025, and in which Plaintiff was denied access to her prescribed medication.  This denied access caused Plaintiff to experience painful seizures.  Plaintiff alleges that the Detention Center participated in, directed, ratified, or continued the prosecution and detention described in this Complaint despite the absence of probable cause and despite information regarding Plaintiff's disability and medical needs. Plaintiff brings claims for non-advocacy conduct and for policies, customs, or supervisory actions not protected by absolute prosecutorial immunity, and reserves the right to amend to add the proper governmental entity and responsible officials upon confirmation

17. **Defendants John/Jane Does 1 through 25** are individual law enforcement officers, deputies, supervisors, dispatchers, and/or jail staff members whose identities are currently unknown, who participated in or caused the constitutional violations alleged in this Complaint. Plaintiff brings this complaint against John/Jane Does 1 through 25 individually and in their capacity as law enforcement officers, deputies, supervisors,

5

dispatchers, and/or jail staff members.  Plaintiff will seek leave to amend to substitute their true names once identified.

18. At all relevant times, each individual Defendant acted under color of the statutes, ordinances, regulations, customs, and usages of the State of Maine and the relevant county and municipal entities, and within the scope of their employment and/or agency.

## IV. FACTUAL ALLEGATIONS

19. Ms. Richardson incorporates by reference each of the preceding paragraphs as if fully set forth here.

20. Ms. Richardson lives at 1022 Orchard Drive in Wilton, Maine. She is in her sixties and disabled, and she relies on essential medications. The deprivation of those medications creates a serious risk of harm, including seizures.

21. On or about August 5, 2025, law enforcement officers from one or more of the following agencies came to Ms. Richardson's home and property: Franklin County Sheriff's Office, Wilton Police Department, Farmington Police Department, and Jay Police Department. The officers' presence was based on a claim that Ms. Richardson had threatened someone on the telephone and/or had threatened a nurse associated with a hospital.

22. The officers came onto Ms. Richardson's property, "roused" her, and confronted her. Ms. Richardson told the officers to leave and asked for a warrant. The officers did not present a warrant authorizing entry, arrest, or search.

23. Ms. Richardson informed the officers that she was disabled and needed her vital medications. She requested basic accommodation and time to gather her medications, dress appropriately, and arrange for the care of her dogs. The officers refused these requests and proceeded to take her into custody.  Ms. Richardson was detained until

August 6, 2025, until roughly 09:00 AM, then taken to St. Mary's Regional Medical Center ("SMRMC") where she was held until roughly 09:30 PM on August 6, 2025.

24. The officers' refusal to permit Ms. Richardson to access essential medication before transport was not a minor inconvenience. It created a foreseeable and substantial risk that she would experience an acute medical crisis during the ensuing detention and transport, particularly given her age and disability.

25. Ms. Richardson was transported to the Franklin County Detention Center and held for approximately twenty-two hours. During detention, she spent approximately nine hours in a cell, without access to her vital medications. During this period, Ms. Richardson suffered seizures.

26. Despite Ms. Richardson's visible distress and her report on medical need, staff and/or officers failed to provide timely medical evaluations, failed to provide necessary medications, and failed to implement reasonable custodial safeguards to prevent further harm.

27. At some point during this custodial period, a bail commissioner came and stated, in substance, that Ms. Richardson did not belong there and directed that she be sent to SMRMC in Lewiston for medical care.

28. Even after arrival at SMRMC, Ms. Richardson continued to go without her medications until she was able to speak with a nurse practitioner. The nurse practitioner allegedly told her that she was "fine," minimizing her medical needs despite the seizure history during detention and the known risks of medication interruption.

29. Ms. Richardson was ultimately released at or around 09:30 PM on August 6, 2025. The underlying accusation referenced by officers and in later proceedings involved "criminal

threatening," and Ms. Richardson reports she has criminal defense counsel for those charges.

30. On September 9, 2025, officers returned to Ms. Richardson's home and said they had received a call about "loud music." Ms. Richardson perceived this as part of a continuing pattern of harassment and intimidation following her assertion of rights and her insistence on lawful process because Ms. Richardson lives on twenty-five acres of land, absent nearby neighbors, making a claim of her playing loud music implausible.

31. Ms. Richardson also questioned whether law enforcement might have been searching for another person with the same name, which underscores the need for careful verification before law enforcement initiates a home seizure and arrest.

32. Throughout these events, Defendants failed to implement basic safeguards expected when dealing with an older disabled person who reports essential medication needs, including ensuring continuity of medication, prompt medical screening, documentation of reported medical conditions, and prompt transfer to medical care when seizures occurred.

33. The conduct described was not an unavoidable accident. It was the foreseeable outcome of deficient policies, training, supervision, and discipline regarding warrantless home seizures, probable cause determinations for "threatening" allegations, and constitutionally required medical care for detainees.

## V. CLAIMS FOR RELIEF

*All counts are pleaded in the alternative to the extent permitted. Plaintiff brings the following claims under the federal civil rights statute.* 42 U.S.C. § 1983 (as enacted 1871).

## COUNT I: Unreasonable Search and Seizure and Warrantless Home Seizure
### (Federal Civil Rights)

34. Ms. Richardson incorporates by reference each of the preceding paragraphs as if fully set forth here.

35. The Fourth Amendment protects individuals against unreasonable searches and seizures, with special solicitude for the home and its curtilage.

36. Defendants, including the responding officers and their employing agencies, entered onto Ms. Richardson's property, confronted her at home, and seized her without presenting a warrant and without adequate justification for a warrantless seizure in or at the home.

37. Ms. Richardson expressly demanded that the officers leave and asked for a warrant. Rather than respecting that invocation of constitutional limits, Defendants escalated and effectuated a custodial seizure.

38. To the extent Defendants contend exigency, Ms. Richardson's allegations refute it. She sought only time to obtain medication, dress appropriately, and arrange care for her dogs. Those requests are consistent with stability, not immediate danger, and they underscore that officers had time to seek judicial authorization if they believed lawful grounds existed.

39. Defendants' actions constituted an unreasonable seizure in violation of the Fourth Amendment, actionable under the federal civil rights statute.

40. As a direct and proximate result, Ms. Richardson suffered loss of liberty, emotional distress, physical harm, and other damages.

### COUNT II: Arrest and Prolonged Detention Without Probable Cause
### (Federal Civil Rights)

41. Ms. Richardson incorporates by reference each of the preceding paragraphs as if fully set forth here.

42. The Fourth Amendment prohibits arrest and detention without probable cause.

43. Defendants arrested Ms. Richardson based on an accusation of threatening someone by phone and/or threatening a nurse, yet the circumstances described indicate that Defendants did not adequately verify the accusation, did not appropriately assess identity, and did not develop facts sufficient to justify a custodial arrest, particularly in the heightened constitutional context of a home seizure.

44. Ms. Richardson was detained for approximately twenty-two hours, including approximately nine hours in a cell during which she suffered seizures. Regardless of the initial decision to take her into custody, Defendants had a continuing duty to promptly reevaluate whether probable cause supported continued detention as information arose, including the bail commissioner's view that she did not belong in jail and the emergence of an acute medical crisis.

45. Defendants' continuation of detention under these circumstances was unreasonable and violated Ms. Richardson's Fourth Amendment rights.

46. As a direct and proximate result, Ms. Richardson suffered loss of liberty, physical injury, emotional distress, and other compensable damages.

### COUNT III: Deliberate Indifference to Serious Medical Needs and
### Unconstitutional Conditions of Confinement (Federal Civil Rights)

47. Ms. Richardson incorporates by reference each of the preceding paragraphs as if fully set forth here.

48. As a pretrial detainee, Ms. Richardson was entitled to constitutionally adequate medical care and to conditions of confinement that do not amount to punishment and do not reflect deliberate indifference to serious medical needs.

49. Ms. Richardson's need for "vital meds" was a serious medical need. The risk of seizure from medication interruption is well known, foreseeable, and preventable with basic custodial protocols.

50. Defendants knew, or should have known, that Ms. Richardson required essential medications. Ms. Richardson asked to retrieve them and was refused. After she was jailed, she remained without medication and suffered seizures during detention.

51. Defendants failed to provide timely and appropriate medical attention, failed to ensure access to prescribed medications, and failed to implement reasonable safety measures despite the obvious risk of severe harm. These failures were not mere negligence. The alleged facts permit the inference that Defendants consciously disregarded a substantial risk to Ms. Richardson's health.

52. The bail commissioner's reported statement that Ms. Richardson did not belong there, followed by her transfer to SMRMC, underscores the extent to which the detention setting was inappropriate and the seriousness of her condition while in custody.

53. By denying essential medication and allowing Ms. Richardson to experience seizures without adequate intervention, Defendants violated Ms. Richardson's rights under the Fourteenth Amendment, actionable under the federal civil rights statute.

54. As a direct and proximate result, Ms. Richardson suffered seizures, pain, fear, emotional distress, humiliation, and other damages.  To this day, Ms. Richardson suffers on average

11

four weekly seizures.  Prior to this incident, seizures rarely occurred because of her medication.

## COUNT IV: Failure to Provide Reasonable Accommodations for Disability in Custody (Federal Civil Rights)

55. Ms. Richardson incorporates by reference each of the preceding paragraphs as if fully set forth here.

56. Ms. Richardson is disabled. She requires a wheelchair and vital medications to avoid seizures.

57. Defendants' handling of Ms. Richardson, including refusing her the opportunity to obtain essential medication before transport, failing to ensure continuity of care during detention, and minimizing her condition when she finally reached medical evaluation, effectively denied her meaningful access to safe custody and basic services on an equal basis.

58. While Ms. Richardson expects discovery to establish the full scope of Defendants' disability-related failures, the facts already alleged demonstrate at minimum a constitutional violation where officials knowingly disregarded a detainee's disability-related medical needs in a custodial setting.

59. Defendants thereby violated Ms. Richardson's rights secured by the Constitution, actionable under the federal civil rights statute.

## COUNT V: Municipal and Supervisory Liability for Policies, Practices, Customs, Training, and Supervision (Federal Civil Rights)

60. Ms. Richardson incorporates by reference each of the preceding paragraphs as if fully set forth here.

12

61. The Franklin County Sheriff's Office, Wilton Police Department, Farmington Police Department, Franklin County Detention Center, Jay Police Department, and the corresponding county and municipal entities responsible for them, maintained policies, customs, or practices that were moving forces behind the violations alleged in this Complaint.

62. Those policies, customs, or practices include, but are not limited to: inadequate training and supervision regarding warrantless seizures at the home; inadequate training on probable cause assessments for allegations of threatening communications; inadequate training and protocols for ensuring access to essential medications and medical screening for detainees; inadequate supervision and discipline for officers and staff who deny medical needs; and inadequate coordination between law enforcement and medical facilities when transporting disabled arrestees.

63. The predictable consequence of these deficient policies and practices is precisely what occurred here: a disabled elderly woman was taken from her home without a warrant, held for nearly a full day, denied essential medication, suffered seizures, and was then transported for medical care only after a bail commissioner recognized the obvious mismatch between her condition and continued detention.

64. The municipal and supervisory Defendants were deliberately indifferent to the known or obvious consequences of these deficiencies, and those deficiencies caused Ms. Richardson's injuries.

65. Accordingly, the municipal and supervisory Defendants are liable under the federal civil rights statute for the constitutional violations suffered by Ms. Richardson.

## VI. DAMAGES AND INJURIES

66. As a direct and proximate result of Defendants' acts and omissions, Ms. Richardson suffered and continues to suffer injuries, including, but not limited to: seizures; physical pain and suffering; emotional distress; humiliation; fear; anxiety; loss of liberty; interference with medical stability; and out-of-pocket losses related to the detention and resulting medical crisis.  Absent her prescribed medication, Ms. Richardson's seizures occur within twelve hours.  Here, she forwent medication for twenty-six hours, a dangerous amount of time to withhold her medication.

67. Ms. Richardson continues to be under medical care from these injuries.

68. The prolonged symptoms of these injuries include, but are not limited to, increased frequency of seizures, unwillingness to communicate with others, inability to read books, and nervous system issues.

69. Ms. Richardson now experiences on average four weekly seizures but before the above-mentioned incident rarely experienced seizures.

70. The full extent of damages will be proven at trial.

71. Defendants' conduct was willful, wanton, reckless, and in callous disregard of Ms. Richardson's federally protected rights, entitling her to punitive damages against the individual Defendants to the extent permitted by law.

## VII. REQUEST FOR RELIEF

72. Plaintiff requests that the Court enter judgment in her favor and against Defendants as follows:

73. Award compensatory damages in an amount to be determined at trial for physical injury, pain and suffering, emotional distress, loss of liberty, and other harms.

14

74. Award punitive damages against the individual Defendants in an amount to be determined at trial, to punish and deter unconstitutional conduct.

75. Award declaratory relief that Defendants' acts and omissions violated Ms. Richardson's rights under the United States Constitution.

76. Award appropriate injunctive relief requiring the responsible county and municipal entities to adopt and implement constitutionally adequate policies, training, and supervision regarding (a) warrantless home seizures, (b) probable cause determinations for threatening allegations, and (c) detainee medical screening and continuity of essential medications, including accommodations for disabled detainees.

77. Award reasonable attorneys' fees and costs, including expert witness fees, as permitted by law. 42 U.S.C. § 1988 (as enacted 1871, amended).

78. Award pre-judgment and post-judgment interest as permitted by law. 28 U.S.C. § 1961 (as enacted 1948).

79. Grant such other and further relief as the Court deems just and proper.

### VIII. JURY DEMAND

80. Plaintiff demands a trial by jury on all issues so triable.

Respectfully Submitted,

Dated: May 7, 2026

/s/ Richard M. Lucas
Richard M. Lucas, Esq., Bar No. 11520
Attorney for Plaintiff
STEVE SMITH Trial Lawyers
191 Water Street
Augusta, ME 04330
T (207) 622-3711
F (207) 707-1036
Info@Americantrialgroup.com

15